IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REPUBLIC FRANKLIN INSURANCE    *
COMPANY, et al.,

                               *

       Plaintiffs,

                               *

v.                                    Civil Action No. GLR-21-765

                               *

MARCUS EDWARD TAYLOR, II,
et al.,                              *

       Defendants.           *

                             ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Tikia Maria Wilson and Russell Chae Stewart's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 24). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons set forth below, the Court will deny the Motion.

## I.        BACKGROUND

### A.    Factual Background

Plaintiffs Republic Franklin Insurance Company ("Republic") and Graphic Arts Mutual Insurance Company ("Graphic Arts") (collectively, "Utica")[2] allege that on or about Sunday, August 9, 2020, Defendant Marcus Edward Taylor, II, an employee of

---

[1] The Court recognizes that Defendants have requested a hearing on the Motion. Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

[2] "Graphic Arts Mutual Insurance Company and Republic Franklin Insurance Company are part of a group of insurance companies that operate under the trade name, Utica National Insurance Group." (Defs.' Rule 103.3 Notice at 2, ECF No. 2).

Bancroft Mechanical Contractor, Inc. ("Bancroft"), was operating a 2006 Chevrolet Express G2500 van owned by Bancroft (the "Van"). (Am. Compl. ¶ 10, ECF No. 5). The Van crossed the center line of Steed Road and collided with a vehicle owned by Wilson and operated by Stewart, in which Wilson was a passenger (the "Accident"). (Id. ¶ 12). The collision caused injuries to Wilson and Stewart and property damage to Wilson's vehicle. (Id.). At the time of the Accident, Taylor was subject to an employment agreement with Bancroft under which he agreed that he would not operate company vehicles "for personal reasons during or after business hours" and that "the use of any alcoholic beverages or controlled substances is strictly forbidden." (Id. ¶ 11). Taylor did not work on the weekends and the accident occurred on a Sunday. (Id. ¶ 13).

At all times relevant to this lawsuit, Republic was the insurer and Graphic Arts was the excess insurer for the Van. (Id. ¶¶ 1–2). Both entities have their principal places of business in New York, and Graphic Arts is incorporated in New York. (Id.). Taylor, Wilson, and Stewart are residents of Prince George's County, Maryland. (Id. ¶¶ 3–5). Utica's policies with Bancroft covering the Van obligate it to pay certain sums owed by its "insured," which is defined in relevant part as "[y]ou . . . [or] [a]nyone else while using with your permission a covered 'auto' you own." (Id. ¶ 14). Utica asserts that Taylor was not an "insured" at the time of the accident because Taylor was not operating the Van with Bancroft's permission, as he was operating the vehicle outside of business hours and was allegedly impaired at the time of the Accident. (Id. ¶ 16).

**B.**   **Procedural History**

On March 25, 2021, Utica filed this lawsuit seeking a declaratory judgment against Defendants Taylor, Wilson, Stewart, Government Employees Insurance Company ("GEICO"), USAA Casualty Company, and USAA General Indemnity Company (together with USAA Casualty Company, "USAA"). (ECF No. 1). On April 16, 2021, before any Defendant filed a responsive pleading in this action, Wilson filed a personal injury lawsuit relating to the Accident in the Circuit Court for Prince George's County, Maryland. See Wilson v. Bancroft Mech. Contractor, Inc., No. CAL-21-4552 (Cir.Ct.Md. filed Apr. 16, 2021).

Utica filed an Amended Complaint on May 10, 2021. (ECF No. 5). The Amended Complaint, which does not contain any formal counts, seeks only a declaratory judgment from this Court that Taylor is not entitled to coverage under the Utica policies for actions arising from the Accident and that Utica therefore has no duty to defend or indemnify Taylor in any such action. (Id. at 7). GEICO filed an Answer on May 13, 2021, (ECF No. 6), and USAA filed its Answer on May 26, 2021, (ECF No. 9).

On July 22, 2021, prior to filing any responsive pleading in this action, Wilson filed a declaratory judgment action of her own in New York state court and notified this Court of her intention to file a motion to dismiss this case as a result. (See ECF No. 15). Having received no response from Stewart or Taylor, Utica moved for Clerk's entry of default as to those Defendants on August 5, 2021. (ECF No. 17). Stewart filed an Answer on August 12, 2021, (ECF No. 18), but hearing no response from Taylor, the Clerk issued an Entry of

Default against Taylor and notified Taylor of the default on August 13, 2021, (ECF Nos. 19, 20).

On August 26, 2021, Wilson and Stewart filed the instant Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 24). On September 15, 2021, Utica, joined by GEICO and USAA, filed an Opposition (ECF No. 28), and on September 30, 2021, Wilson and Stewart filed a Reply (ECF No. 29).

## II.      DISCUSSION

### A.    Standard of Review

Although neither party specifies the standard of review in their briefs, Wilson and Stewart's Motion is fundamentally a challenge to this Court's jurisdiction to hear this claim under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. ("DJA"). Accordingly, the Court will evaluate Defendants' challenge under Rule 12(b)(1).

Rule 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from the United States Constitution. Fed.R.Civ.P. 12(b)(1); 28 U.S.C. § 1331. To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). However, when a party challenges subject-matter jurisdiction, the Court may consider "evidence outside the

pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

With a factual challenge, like the one advanced by Wilson and Stewart here, the plaintiff bears the burden of proving the facts supporting subject-matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac, 945 F.2d at 768 (citing Adams, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the

pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

**B.**     **Analysis**

    **1.**     **Context**

Wilson and Stewart ask the Court to dismiss this declaratory judgment lawsuit in favor of their own declaratory judgment action pending in New York state court, which they argue is the appropriate venue to resolve this dispute. Wilson and Stewart likely presume that a New York court is more likely to apply New York law to this dispute. The applicable law is highly relevant because Maryland and New York courts have adopted differing interpretations of the term "permission" in the context of insurance disputes like this one, i.e., whether Taylor had "permission" to operate the vehicle, notwithstanding the terms of his employment agreement with Bancroft. The New York Court of Appeals, consistent with the majority view, has held that the term "permission" turns not on "whether the driver had permission to use the vehicle for the particular activity at issue, but on whether the driver had permission to use the vehicle at all (i.e. the distinction between a permissive user and a thief)." Carlson v. Am. Int'l Grp., Inc., 89 N.E.3d 490, 498 (N.Y. 2017). Maryland, on the other hand, has adopted the minority view of this question, which is more favorable to insurers such as Utica. See Nat'l Grange Mut. Ins. v.

Pinkney, 399 A.2d 877, 879–80 (Md. 1979) (rejecting the "liberal rule" of construction of omnibus clauses in automobile-insurance policies that extend coverage to all drivers operating the insured vehicle with the owner's permission).

> 2.    **Choice of Law**

As an initial matter, the Court notes that this is a diversity action. (See Am. Compl. ¶ 8). It is axiomatic that federal courts exercising diversity jurisdiction over a matter "apply the choice of law rules of the forum state." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). In Maryland, the doctrine of lex loci contractus applies when interpreting contracts, including insurance contracts. See Allstate Ins. v. Hart, 611 A.2d 100, 101 (Md. 1992). Under this doctrine, the court applies the substantive law of the state where the contract was made to determine its validity and construction. Id. Normally, "a contract is made where the last act necessary to make the contract binding occurs." Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins., 893 F.Supp.2d 715, 725 (D.Md. 2012).

In the insurance context, "delivery of the policy and payment of the premium are ordinarily the last acts necessary to make an insurance policy binding." Id. Courts look at the payment of the first premium. See, e.g., Mut. Life Ins. v. Mullen, 69 A. 385, 387 (Md. 1908) ("[A]s the first premium on the policy was paid in this state by a citizen of this state, and the policy delivered here, . . . it is a Maryland contract and . . . governed by Maryland laws."). Courts require "concrete evidence" to determine where the delivery of the policy and payment of the premium took place. IFCO Sys. N. Am., Inc. v. Am. Home Assurance Co., No. WMN-09-2874, 2010 WL 1713866, at *3 (D.Md. Apr. 27, 2010). When the

parties only offer "assumptions and guesses" about the <u>lex loci contractus</u> of the policy, courts must look at matters outside the pleadings, and, accordingly, convert the motion to dismiss to a motion for summary judgment on that issue. <u>Id.</u> at *3–4.

Here, the insurance agreement specifies the location of the insured, Bancroft, as 11720 Nevel Street, Rockville, Maryland. (<u>See</u> Bancroft Policy at 6, ECF No. 24-3).[3] The independent agent is also listed on that page as "HMS Ins. Assoc., Inc.," in Cockeysville, Maryland. (<u>Id.</u>). Thus, inasmuch as Bancroft was located in Maryland, and the policy was delivered to Bancroft in Maryland, the <u>lex loci contractus</u> of the policy is in Maryland. Accordingly, the Court will apply Maryland substantive law to its review of the policy.

### 3.    Abstention

The DJA provides that "[i]n a case of actual controversy . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005). Nevertheless, when jurisdiction is established, federal courts generally have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976); <u>accord</u> <u>Great Am. Ins. Co. v. Gross</u>, 468

---

[3] The document filed as ECF No. 24-3 is a Declaration followed by a number of exhibits. The Bancroft Policy is Exhibit 1 of the Declaration and comprises pages 4–108 of ECF No. 24-3, using the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system. References to page numbers within ECF No. 24-3 refer to the page number assigned by the Court's CM/ECF system.

F.3d 199, 206 (4th Cir. 2006). As the Supreme Court reaffirmed in <u>Wilton v. Seven Falls</u> <u>Co.</u>, 515 U.S. 277, 286 (1995), however, district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of <u>Colorado River</u> and [<u>Moses H. Cone Mem'l Hosp. v.</u> <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 14 (1983)]." "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Wilton</u>, 515 U.S. at 288. This is because the DJA, the source of a federal court's authority to issue a declaratory judgment, has been understood "[s]ince its inception" to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." <u>Id.</u> at 286.

Indeed, the DJA contains a "textual commitment to discretion": it provides that a court "<u>may</u> declare the rights and other legal relations of any interested party seeking such declaration." <u>Wilton</u>, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)). Thus, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in state court, "a district court may either stay the suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "remanding it to state court." <u>Myles Lumber Co. v. CNA Fin. Corp.</u>, 233 F.3d 821, 823 (4th Cir. 2000) (quoting <u>Quackenbush v. Allstate Ins.</u>, 517 U.S. 706, 721 (1996)). The inherent discretion of a

federal court to abstain from entertaining a declaratory action is often referred to as Wilton/Brillhart[4] abstention or Wilton abstention.

In general, the Fourth Circuit has said that "a declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Penn-America Ins. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotation marks omitted) (quoting Centennial Life Ins. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)). However, "[w]hen a related state court proceeding is pending," as is the case here, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action." Id. (quoting Poston, 88 F.3d at 256).

Since Wilton, the Fourth Circuit has issued several decisions providing factors for district courts to consider in the exercise of their discretion whether to abstain from issuing a declaratory judgment. See, e.g., United Capitol Ins. v. Kapiloff, 155 F.3d 488 (4th Cir. 1998); Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419 (4th Cir. 1998). The factors are often called the "Kapiloff factors" or the "Ind-Com factors." In balancing the factors, "[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief." Ind-Com, 139 F.3d at 423 (alteration in original). It "should be a significant factor in the district court's determination," but it "is not dispositive." Id.

---

[4] Brillhart v. Excess Ins., 316 U.S. 491 (1942).

If <u>Wilton</u> abstention is available for the entire case, a court need not apply the more stringent <u>Colorado River</u> "exceptional circumstances" test. <u>See</u> <u>Gross</u>, 468 F.3d at 210–11. Therefore, before applying the <u>Kapiloff</u> factors, the Court must determine whether this case qualifies as a purely declaratory action, to which <u>Wilton</u> abstention, guided by the <u>Kapiloff</u> factors, may apply. This is because "the <u>Brillhart</u>/<u>Wilton</u> standard does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief." <u>Gross</u>, 468 F.3d at 211. In such a case, "[b]ecause a court is required to address nondeclaratory claims, . . . the benefit derived from exercising discretion not to grant declaratory relief is frustrated." <u>Id.</u>

Here, the Complaint seeks only declaratory relief. (<u>See</u> Am. Compl. at 7). The Court is thus satisfied that it is vested with discretion under <u>Wilton</u> to abstain from exercising jurisdiction in this case. Accordingly, to make that discretionary determination, the Court will apply the <u>Kapiloff</u> factors, which are as follows:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

<u>Kapiloff</u>, 155 F.3d at 493–94 (quoting <u>Nautilus Ins. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 377 (4th Cir. 1994)).

As to the first factor, the Court notes that Wilson and Stewart seek to dismiss this case in favor of the parallel state court proceeding Wilson has filed in New York. In order

for a state's interest to "weigh against the exercise of federal jurisdiction," the questions of law must be "difficult" or "unsettled"; that is, they should involve more than "the routine application of settled principles of law to particular disputed facts." Nautilus Ins., 15 F.3d at 378. This is because state interests are "not particularly significant" when the state law issues are "standard" matters of "agency and contract interpretation," because a "federal court would be unlikely to break new ground or be faced with novel issues of state interest." Kapiloff, 155 F.3d at 494.

This action does not appear to involve difficult or unsettled questions of law. Rather, the case appears to turn on settled law involving the issue of permissive use in the context of an insurance policy. Further, this case—which Wilson and Stewart seek to dismiss in favor of a New York proceeding—will be governed by Maryland substantive law and involves insurance coverage for a Maryland driver employed by a Maryland company, involved in an accident in Maryland with two residents of Maryland, where the policies were delivered in Maryland and the risk is located in Maryland. Accordingly, the Court finds that New York's interest does not weigh against the exercise of federal jurisdiction.

As to the second factor, there is no credible argument that this case could be litigated more efficiently in the New York state courts. Every individual Defendant was a Maryland resident at the time this action was filed, (see Am. Compl. ¶¶ 3–5), and Taylor is a criminal defendant in Maryland charged with driving under the influence at the time of the Accident. See Maryland v. Taylor, No. CT201105X (Cir.Ct.Md. filed Oct. 22, 2020). Accordingly, to the extent testimony is required, this Court would be considerably more convenient to the parties than a New York court. At best, the courts will resolve this dispute equally

efficiently. Moreover, "[i]n general, where two parallel suits are pending in state and federal court, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" <u>VRCompliance LLC v. HomeAway, Inc.</u>, 715 F.3d 570, 574 (4th Cir. 2013) (quoting <u>Ellicott Mach. Corp. v. Modern Welding Co.</u>, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Accordingly, the second factor does not augur in favor of abstention.

With respect to the third factor, the Court agrees with Wilson and Stewart that this action and the New York action contain "overlapping issues of fact or law" that might create unnecessary "entanglement" between the state and federal courts. The New York state court action arises from the Accident, involves the same parties as this action, and seeks the same form of relief—a declaratory judgment concerning the scope of the Utica policies. <u>See</u> <u>Kapiloff</u>, 155 F.3d at 494 ("[S]ince both actions raised the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts was a genuine possibility."). The Court notes that this entanglement is entirely a creation of Wilson— with this action pending, and a separate tort action pending in Maryland state court, Wilson took it upon herself to file a parallel proceeding in New York state court. Nevertheless, this factor weighs in favor of abstention.

The Court finds that the fourth factor, whether the federal action is mere "procedural fencing," weighs against abstention. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." <u>Gross</u>, 468 F.3d at 212. Here, no actions were

pending in state court at the time this lawsuit was filed. Indeed, if any party is engaged in forum shopping regarding this dispute, it is Wilson, who filed state court actions in two different states after this lawsuit was extant. As Utica correctly describes:

> After filing this action, Tikia Wilson does not waive service of process, asks for an extension of time to file a responsive pleading after service has been made, and the day before Wilson's responsive pleading is due, files a State Declaratory Judgment action in New York and then makes the claim that the instant action should be dismissed because an action is pending in New York, although the New York action had only been filed four hours before this claim was asserted.

(Mem. P. & A. Supp. Opp'n Defs.' Mot. Dismiss at 13, ECF No. 28-1).

It is true that the Court should not "place undue significance on the race to the courthouse door." Poston, 88 F.3d at 258. But this is not a case where Utica filed its declaratory judgment action in a far-flung district with little relationship to the parties or the underlying dispute. This first-filed action is in Maryland, in a case that will be governed by Maryland substantive law and that involves insurance coverage for a Maryland driver employed by a Maryland company, involved in an accident in Maryland with two residents of Maryland, where the policies were delivered in Maryland and the risk is located in Maryland. See Nautilus Ins. v. 200 W. Cherry St., LLC, 383 F.Supp.3d 494, 508 (D.Md. 2019) ("[T]here is no indication that [Plaintiff] filed the action in this Court to obtain a more favorable forum, because Maryland law is controlling in both forums.").[5]

---

[5] The Court notes that even applying New York's choice-of-law principles—i.e., analyzing the case as if the Court were located in New York—Maryland substantive law would govern this case. In contractual claims, New York courts determine which State has "the most significant relationship to the transaction and the parties." Schwartz v. Liberty Mut. Ins., 539 F.3d 135, 151 (2d Cir. 2008) (quoting Zurich Ins. v. Shearson Lehman

Wilson and Stewart cite <u>Maryland Casualty Co. v. Knight</u>, 96 F.3d 1284, 1289 (9th Cir. 1996), for the proposition that when an insurer makes an anticipatory filing, "the federal case is still deemed 'reactive' to the state case" and abstention is appropriate. In the very next sentence of that decision, however, the Ninth Circuit clarified that the case under consideration was distinct because "[t]he federal action here is neither 'reactive' to, nor duplicative of, any parallel state proceeding. There was no state action pending in state court when Maryland filed this action in March of 1992." <u>Id.</u> Thus, <u>Knight</u> does not appear to be an overly helpful precedent for Wilson and Stewart.

The Court recognizes that Wilson and Stewart were at least partially barred from pursuing a parallel proceeding in state court before this case was filed because neither New York law nor Maryland law allow a tort victim to bring a direct action against a tortfeasor's insurer until either the insurer sues the victim or the victim secures a judgment in the underlying tort case. <u>See</u> <u>Hershberger by Hershberger v. Schwartz</u>, 198 A.D.2d 859, 859 (N.Y.App.Div. 1993); <u>Wash. Metro. Area Transit Auth. v. Queen</u>, 597 A.2d 423, 425–26

---

Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994)). In this so-called "center of gravity" or "grouping of contacts" test, "New York courts look to 'the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business.'" <u>Homestead Vill. Assoc., L.P. v. Diamond State Ins</u>, 818 F.Supp.2d 642, 646 (E.D.N.Y. 2011) (quoting <u>Olin Corp. v. Ins. Co. of N. Am.</u>, 743 F.Supp. 1044, 1049 (S.D.N.Y. 1990)). "Of these factors, the location of the insured risk is given the greatest weight." <u>Id.</u> Here, as set forth above, the location of the insured risk was Maryland; the insured's principal place of business was Maryland; the policy was delivered in Maryland; the location of the agent was in Maryland; and the premiums were paid from Maryland. The only factor in favor of applying New York law is the insurer's place of business. This is clearly overwhelmed by the factors favoring the application of Maryland law. Accordingly, the Court finds that Maryland law will likely control in the New York state court action.

(Md. 1991). Thus, the Court places minimal weight on the fact that Utica was first to file a declaratory judgment action. But as set forth above, the Court's determination regarding the procedural fencing factor is not premised on Utica's status as first filer, but rather on the fact that this Court represents a wholly appropriate forum for this lawsuit and the resultant lack of any "indication that [Plaintiff] filed the action in this Court to obtain a more favorable forum." 200 W. Cherry St., 383 F.Supp.3d at 508.

At bottom, the Court finds that three of the four Kapiloff factors weigh in favor of retaining jurisdiction over this case. And while the third Kapiloff factor is important, it is not dispositive. See Ind-Com, 139 F.3d at 423 ("[T]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief."). In light of the Court's analysis and the fact that this case is, at its core, rooted in Maryland, the Court finds that "considerations of practicality and wise judicial administration" favor retaining jurisdiction over this case. Wilton, 515 U.S. at 288. Accordingly, the Court will deny the Motion to Dismiss.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants Tikia Maria Wilson and Russell Chae Stewart's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 24). A separate Order follows.

Entered this 25th day of March, 2022.


_____/s/_____
George L. Russell, III
United States District Judge